IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KAYLA GEBHARDT, GARY GRANT, LAINA JENKINS, SIA MOODY, RACHEL ROBIDOUX, and RANDALL SEGGEBRUCH, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>JIMMY JOHN'S, LLC,<br><br>        Defendant. | Case No. 23-cv-2168<br><br>**JURY DEMAND** |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446(b), and 1453(b), Defendant Jimmy John's, LLC, by and through its undersigned counsel, hereby provides notice of removal of this action from the Circuit Court of Champaign County, Illinois, Sixth Judicial Circuit, to the United States District Court for the Central District of Illinois, Urbana Division. In support of removal, Jimmy John's, LLC respectfully states as follows:

**I.   PROCEDURAL HISTORY AND PLAINTIFFS' ALLEGATIONS**

1. On June 13, 2023, Plaintiffs Kayla Gebhardt, Gary Grant, Laina Jenkins, Sia Moody, Rachel Robidoux, and Randall Seggebruch (collectively, "Plaintiffs"), commenced this action by filing a putative Class Action Complaint ("Complaint") against Defendant Jimmy John's, LLC ("Defendant") in the Circuit Court of Champaign County, Illinois, Sixth Judicial Circuit. Plaintiffs' lawsuit is captioned as *Kayla Gebhardt, et al. v. Jimmy John's, LLC*, Case No.

2023LA000082 (Ill. 6th Jud. Cir. Ct.) (the "State Court Action"). A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit A**.[1]

2. Defendant was served with the Summons and Complaint on July 6, 2023. *See* **Exhibit A**. Removal is therefore timely because Defendant files this notice on August 4, 2023—within 30 days of service of the Complaint and Summons. *See* 28 U.S.C. § 1446(b)(1).

3. The Complaint alleges Defendant violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, by collecting and storing Plaintiffs' biometric identifiers (voiceprints) and associated biometric information without their written consent. (Cplt. ¶¶ 23–34, 44–47, 54–57.) Plaintiffs further allege that Defendant did not provide them with a retention schedule or guidelines for permanently destroying their voiceprints. (*Id.* ¶¶ 35, 48, 58.)

4. Generally, all six Plaintiffs allege they "utilized Defendant's drive-throughs and *on information and belief* had their voiceprints captured, collected, and stored by Defendant." (*Id.* ¶ 23 (emphasis added).) Plaintiff Kayla Gebhardt ("Gebhardt") allegedly "used the drive-through at the Burlington, Iowa store approximately 20 times during the relevant period." (*Id.* ¶ 24.) Plaintiff Gary Grant ("Grant") allegedly "used the drive-through at the Athens, Lancaster, and Columbus, Ohio locations approximately 50 time [*sic*] during the relevant time period." (*Id.* ¶ 25.) Plaintiff Laina Jenkins ("Jenkins") allegedly "used the drive-through at the Roanoke, Virginia location approximately 15 times during the relevant time period." (*Id.* ¶ 26.) Plaintiff Sia Moody ("Moody") allegedly "used the drive-through at the Glenn Ellyn, Illinois [*sic*] location approximately 114 times during the relevant time period." (*Id.* ¶ 27.) Plaintiff Rachel Robidoux ("Robidoux") allegedly "used the drive-through at the Berwyn, Illinois store approximately 120

---

[1] Enclosed within Exhibit A is the proof of service form, the Summons, Complaint, and Plaintiffs' Motion for Class Certification, which they filed on June 23, 2023.

times between 2018 and May 2023." (*Id.* ¶ 28.) Plaintiff Randall Seggebruch ("Seggebruch") allegedly "used the drive-through at the Morris, Illinois approximately 50 times during the relevant time period." (*Id.* ¶ 29.)

5. Without explaining the purported factual basis for their allegations, Plaintiffs allege "Defendant recorded Plaintiffs' voices at some point when they used the drive-through and extracted their voiceprint biometrics." (*Id.* ¶ 30.) The Complaint further alleges "Defendant stored Plaintiffs' voiceprint biometrics were stored [*sic*] in an electronic database and compared against Plaintiffs' voiceprint biometrics upon a subsequent use of the drive-through ordering system." (*Id.*) Plaintiffs claim they did not provide express written permission for Defendant to collect or store their biometric identifiers or biometric information. (*Id.* ¶¶ 31–32.) They also assert that Defendant's alleged collection of their biometrics without their consent "invaded Plaintiffs' statutorily protected right to maintain control over their biometrics." (*Id.* ¶ 34.)

6. Additionally, Plaintiffs allege Defendant did not provide them "with a retention schedule and/or guidelines for permanently destroying their biometric identifiers and biometric information." (*Id.* ¶ 35.)

7. The Plaintiffs seek to represent a putative nationwide class defined as follows: "All individuals who had their voiceprints collected, captured, received, or otherwise obtained, and/or stored, by Defendant." (*Id.* ¶ 36.)

8. Further, Plaintiffs Moody, Robidoux, and Seggebruch seek to represent a putative Illinois subclass defined as follows: "All individuals who had their voiceprints collected, captured, received, or otherwise obtained, and/or stored, by Defendant in Illinois." (*Id.*)

9. The Complaint alleges two identical causes of action under BIPA. The "First Cause of Action" asserts violations of BIPA's sections 15(a) and 15(b) on behalf of all Plaintiffs and the

putative nationwide class.  (*Id.* ¶¶ 41–48.)  The "Second Cause of Action" similarly asserts violations of BIPA's sections 15(a) and 15(b), but only on behalf of Plaintiffs Moody, Robidoux, Seggebruch, and the Illinois subclass.  (*Id.* ¶¶ 51–58.)

10. Each cause of action alleges that each instance in which Defendant collected, stored, used, or otherwise obtain Plaintiffs' biometric data constitutes a separate violation of BIPA. (*Id.* ¶¶ 49, 59.)  On behalf of themselves and each member of the putative nationwide class and Illinois subclass, Plaintiffs seeks the following relief: (1) injunctive and equitable relief to require Defendant to comply with BIPA's requirements; (2) statutory damages of $1,000 for each and every negligent violation (or, alternatively, of $5,000 for each and every violation of BIPA to the extent committed intentionally or recklessly); and (3) reasonable attorneys' fees and costs and other litigation expenses.  (*Id.* ¶¶ 50, 60.)

11. As the discussion below makes clear, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

## II.   REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT

12. This case is removable because this Court has original jurisdiction under the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d).  CAFA provides federal district courts with original jurisdiction over class actions where: (1) any member of the proposed class is a citizen of a state different from any defendant; (2) the proposed class consists of more than 100 members; and (3) the amount in controversy exceeds the sum or value of $5,000,000, aggregating all claims and exclusive of interests and costs.  *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B)).[2]  As a class action that satisfies

---

[2] This action was brought pursuant to 735 ILCS 5/2-801 and thus satisfies the definition of "class action" under CAFA, which includes "any civil action filed under Federal Rule of Civil Procedure 23, or similar State statute or rule of judicial procedure." *See* 28 U.S.C. § 1332(d)(1)(B); Cplt. ¶¶ 36–40.

these requirements, the State Court Action is removable under § 1446. *See* 28 U.S.C. § 1453(b). There is no presumption against removal in CAFA cases. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (declining to decide whether a presumption against removal applies in "mine-run diversity cases" but "point[ing] out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

### A.     Minimal Diversity Exists Under CAFA

13.    The Complaint alleges Defendant is a corporation that maintains its headquarters in Champaign, Illinois. (Cplt. ¶ 13.) Therefore, Defendant is a citizen of Illinois.

14.    Plaintiff Gebhardt is allegedly a citizen of Illinois. (*Id.* ¶ 7.)

15.    Plaintiff Grant is allegedly a citizen of Ohio. (*Id.* ¶ 8.)

16.    Plaintiff Jenkins is allegedly a citizen of West Virginia. (*Id.* ¶ 9.)

17.    Plaintiff Moody is allegedly a citizen of Illinois. (*Id.* ¶ 10.)

18.    Plaintiff Rabidoux is allegedly a citizen of Tennessee. (*Id.* ¶ 11.)

19.    Plaintiff Seggebruch is allegedly a citizen of Illinois. (*Id.* ¶ 12.)

20.    Therefore, minimal diversity exists under CAFA because one or more members of the proposed class are citizens of a State different from Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). Specifically, Defendant is a citizen of Illinois, while Plaintiffs Grant, Jenkins, and Rabidoux are citizens of Ohio, West Virginia, and Tennessee, respectively.

### B.     The Complaint Alleges More Than 100 Putative Class Members

21.    CAFA's 100-class member threshold is also satisfied on the face of the Complaint. Plaintiffs allege "the number of persons within the Classes is substantial, believed to amount to be [*sic*] in *at least the **thousands**, of persons*." (Cplt. ¶ 37 (emphasis added); *see also id.* ¶ 4.)

22. Based on these allegations, the proposed class plausibly comprises more than 100 members and thereby satisfies CAFA's numerosity requirement. *See* 28 U.S.C. § 1332(d)(5)(B).

### C. The Total Amount In Controversy For the Putative Nationwide Class's Claims Exceeds $5 Million

23. The amount in controversy under CAFA is satisfied if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). In determining the amount in controversy, CAFA requires that "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

24. BIPA allows for recovery of statutory damages of $1,000 for each negligent violation, and $5,000 for each intentional or reckless violation. *See* 740 ILCS 14/20. In the Complaint, Plaintiffs alleges Defendant violated four distinct subsections of BIPA with respect to Plaintiffs and members of the proposed class—sections 15(a), 15(b)(1), 15(b)(2) and 15(b)(3). (*See* Cplt. ¶¶ 46–48, 56–58.) They also allege that "[e]ach instance in which Defendant collected, stored, used, or otherwise Plaintiffs' and/or the Nationwide Class's biometric identifiers or biometric information as described herein constitutes a separate violation of the statute." (*Id.* ¶ 49.)

25. Collectively, Plaintiffs allege they visited Jimmy John's drive-through locations a total of **369** times. (*Id.* ¶¶ 24–29.) Plaintiffs further allege the putative nationwide class numbers "in at least the thousands" of persons. (*Id.* ¶ 37.) Finally, the Complaint seeks $1,000 in statutory damages for all negligent BIPA violations; or, in the alternative, $5,000 in statutory damages for all reckless or intentional BIPA violations on behalf of all individuals in the putative nationwide class. (*Id.* ¶ 50.)

26. Based on these allegations, the Complaint plausibly exceeds the $5,000,000 amount-in-controversy threshold under CAFA. Because Plaintiffs allege that "each instance" in which Defendant obtained Plaintiffs' biometrics constituted a BIPA violation (*i.e.*, every time they

ordered verbally at a Jimmy John's drive-through device), a BIPA judgment in their favor would entitle them to statutory damages for every distinct violation during the applicable five-year statute-of-limitations period. Indeed, the Illinois Supreme Court has held that each unauthorized "collection" of biometric information constitutes a separate violation of the statute, which entitles plaintiffs to statutory damages of up to $5,000 *per violation*. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004 (Ill. July 18, 2023), *as modified on denial of rehr'g* ("A party violates Section 15(b) [of BIPA] when it collects, captures, or otherwise obtains a person's biometric information without informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric information, *but it is no less true with each subsequent scan or collection*." (citation omitted; cleaned up; emphasis added)).

27. Post-*Cothron*, statutory damages in BIPA actions are recoverable for every recurring BIPA violation (no limit), and therefore, the amount in controversy easily meets the $5,000,000 threshold here. For example, to the extent Defendant allegedly committed at least one BIPA violation on each occasion when one of the six Plaintiffs ordered at a Jimmy John's drive-through and were subjected to purported voiceprint technology, Plaintiffs' 369 alleged violations collectively total **$1,845,000** in liquidated damages at $5,000 per violation—the maximum statutory damages amount recoverable under BIPA (*i.e.*, 369 {x} $5,000 = $1,845,000). *See* 740 ILCS 14/20. Considering that the maximum statutory exposure for the **six** Plaintiffs' *individual* claims exceed $1.8 million, the aggregated claims of *thousands* of class members (as alleged in the Complaint), are likely much greater than $5,000,000.

28. Indeed, to the extent the named Plaintiffs' drive-through visits involved violations of multiple provisions of BIPA, Plaintiffs' *individual* claims exceed $5,000,000 on this calculus. The Complaint clearly alleges violations of four BIPA requirements. *First*, the Complaint alleges

"Defendant systematically collected, used, and stored Plaintiffs' and the Nationwide Class members' biometric identifiers and/or biometric information without first obtaining the written release **required by 740 ILCS 14/15(b)(3)**." (Cplt. ¶ 46 (emphasis added).) *Second*, the Complaint alleges "Defendant failed to properly inform Plaintiffs or the Nationwide Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, not did Defendant inform Plaintiffs or the Nationwide Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used**, as required by 740 ILCS 14/15(b)(1)-(2)**." (*Id.* ¶ 47 (emphasis added).) *Third*, the Complaint alleges Defendant "does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs or the Nationwide Class members, as required by BIPA. *See* **740 ILCS 14/15(a)**." (*Id.* ¶ 48 (emphasis added).) Under *Cothron*, each violation of each subsection constitutes a separate BIPA violation entitling a plaintiff to statutory damages. *Cf. Cothron*, 2023 IL 128004, at ¶ 30 (holding "the plain language of section 15(b) and 15(d) demonstrates that such violations occur *with every scan or transmission*") (emphasis added); *id.* at ¶ 41 ("This court has repeatedly recognized the potential for significant damages awards under [BIPA].") (citing cases).

29.     Post-*Cothron*, these four BIPA violations would recur—and entitle Plaintiffs to corresponding statutory damages awards—each time Jimmy John's captured, collected, or used their biometric voiceprints (at a drive-through) without obtaining consent or making the required BIPA disclosures (*see* § 15(b)) *and* without a written retention/destruction schedule (*see* § 15(a)). In other words, for all of the 369 cumulative occasions where the six Plaintiffs allegedly utilized a Jimmy John's drive-through enabled with biometric-voiceprint technology, Defendant allegedly

violated *four* separate provisions of BIPA each time. Therefore, the six Plaintiffs collectively allege a total of **1,476** BIPA violations against Defendant (*i.e.*, 369 drive-through visits {x} 4 BIPA violations = 1,476 total violations). The Complaint also seeks damages "of $5,000 *for each and every violation of BIPA* to the extent committed intentionally or recklessly pursuant to 740 ILCS 14/20(2)." Cplt. at 12 (Prayer for Relief § C) (emphasis added). Because Plaintiffs' seek recovery of statutory damages of $5,000 for "each and every" alleged reckless BIPA violation, the 1,476 BIPA violations alleged in the Complaint puts the amount-in-controversy amount over the $5 million threshold (*i.e.*, 1,476 {x} $5,000 = **$7,380,000**). In short, the $5 million amount-in-controversy threshold is satisfied on the basis of the six Plaintiffs' individual allegations alone.

30.    Additionally, the $5 million threshold is also clearly established by the class allegations. To the extent the Complaint alleges "thousands" (plural) of class members, those allegations are enough in light of the remedies sought on behalf of the nationwide class. (*See* Cplt. ¶ 4 (alleging Defendant illegally collected, stored and used "the voiceprint and associated personally identifiable information of thousands of consumers nationwide . . . ."); *id.* ¶ 37 ("the number of persons within the Classes is substantial, believed to amount to be [*sic*] in at least the thousands, of persons").) Estimating conservatively, even if the class only comprises 1,001 class members, and each class member can only recover for one BIPA violation apiece (despite multiple drive-through visits), the class-wide aggregated amount of statutory damages recoverable for reckless or intentional violations (at $5,000 per violation) will still surpass $5,000,000: *i.e.*, 1,001 class members {x} 1 BIPA violation each {x} $5,000/violation = **$5,005,000**.

31.    Alternatively, to the extent all class members can recover $5,000 for Defendant's alleged violations of each of the four separate BIPA provisions at issue here (*i.e.*, a total recovery of $20,000 damages for each of the 1,000+ class members arising out of Defendant's alleged

violations of §§ 15(a), 15(b)(1), 15(b)(2), and 15(b)(3)), that method of damages calculation also suffices to surpass the $5 million amount-in-controversy requirement: *i.e.*, 1,001 class members {x} 4 BIPA violations each {x} $5,000/violation = **$20,020,000**.

32. Under each of these scenarios, the amount in controversy for the class members' aggregated BIPA claims in this class action exceeds $5,000,000. *See also Bloomberg v. Service Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000 . . . the case belongs in federal court *unless it is legally impossible for the plaintiff to recover that much*.").

33. In sum, Plaintiffs' Complaint alleges sufficient facts to satisfy the $5,000,000 amount-in-controversy requirement under CAFA, as required by 28 U.S.C. § 1332(d)(2),

### III.   VENUE IS PROPER IN THE CENTRAL DISTRICT OF ILLINOIS

34. The United States District Court for the Central District of Illinois, Urbana Division is the appropriate venue for removal of the State Court Action. Under 28 U.S.C. § 1441, a civil action brought in any state court in which the district courts of the United States have original jurisdiction are to be removed to the district court for the district and division embracing the place where the state court action is pending. The State Court Action was filed in Champaign County, Illinois, which is located within this judicial district. *See* 28 U.S.C. § 93(b).

35. As required by 28 U.S.C. §1446(a), the Complaint, Summons and all other "process, pleadings, and orders" served to date on Defendant are attached hereto.

36. As required by 28 U.S.C. §1446(d), written notice of this Notice of Removal will be sent promptly to Plaintiffs' counsel by email and U.S. Mail, and promptly filed with the Clerk of the Circuit Court of Champaign County, Illinois, Sixth Judicial Circuit.

37. By filing this Notice of Removal, Defendant does not waive any defenses to the claim Plaintiffs assert on behalf of themselves and the putative class and subclass, including that Defendant did not violate BIPA and that class certification is inappropriate.

38. Pursuant to Fed. R. Civ. P. 38, Defendant requests a trial by jury on all counts so triable.

**WHEREFORE**, Defendant Jimmy John's, LLC removes Case Number 2023LA000082 pending in the Circuit Court of Champaign County, Illinois, Sixth Judicial Circuit, to the United States District Court for the Central District of Illinois, Urbana Division.

Dated:  August 4, 2023

Respectfully submitted,

JIMMY JOHN'S, LLC

By: */s/ David M. Poell*
       One of Its Attorneys

David M. Poell, Esq. (ARDC No. 6302765)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Tel.:  (312) 499-6300
Fax:  (312) 499-6301
dpoell@sheppardmullin.com

*Attorney for Jimmy John's, LLC*

**CERTIFICATE OF SERVICE**

      I, David M. Poell, an attorney, hereby certify that on August 4, 2023, I caused a true and correct copy of the foregoing document to be electronically filed utilizing the Court's CM/ECF system. I also caused copies of this Notice of Removal (and all exhibits thereto) to be transmitted the following attorney of record via email:

Frank S. Hedin
Arun G. Ravindran
**Hedin Hall LLP**
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
Tel: (305) 357-2107
Fax: (305) 200-8801
fhedin@hedinhall.com
aravindran@hedinhall.com

Carl V. Malmstrom
**Wolf Haldenstein Adler Freeman & Herz LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 391-5059
Fax: (212) 686-0114
malmstrom@whafh.com

*Attorneys for Plaintiffs and the Putative Classes*

                                                 */s/ David M. Poell*
                                               *Counsel for Defendant*