## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DOMINICK POLIZZI, RACHEL ROBIDOUX, and GEORGIA BAIN on behalf of themselves and all others similarly situated, | Case No.: 2:23-cv-02168-CSB-EIL |
| Plaintiff, | |
| v. | |
| JIMMY JOHN'S, LLC, | |
| Defendant. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Dominick Polizzi, Rachel Robidoux, and Georgia Bain individually and on behalf of all others similarly situated, bring this Second Amended Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, against Jimmy John's, LLC ("Defendant"), and alleges as follows based on personal knowledge as to themselves and on the investigation of counsel, and demand trial by jury:

### NATURE OF ACTION

1.     Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing and using Plaintiffs' and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics") without obtaining the requisite prior informed written

---

[1]     A "biometric identifier" is a personal feature unique to an individual, such as a voiceprint, fingerprint, handprint, iris scan, scan of face geometry, among others.

[2]     "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

consent or providing the requisite data retention and destruction policies, in direct violation of BIPA.

2.      The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed.   Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

3.      In recognition of these concerns over the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.*; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or her biometric identifiers or information, *see id.*; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a). Further, the entity must store, transmit and protect an individual's biometric identifiers and biometric information using the same standard of care in the industry and in a manner at least as protective as the means used to protect other confidential and sensitive information. *Id.* 14/15(e). Finally, the entity is expressly prohibited from selling, leasing, trading or otherwise profiting from the individual's biometrics. *Id.* 15/15(c).

4.      In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of BIPA, Defendant is actively collecting, storing, and using – without providing notice, obtaining informed written consent or publishing data retention policies – the "voiceprints" (unique, immutable, and highly sensitive biometric identifiers used to identify persons) of thousands and perhaps millions of its customers nationwide who have utilized one of Defendant's drive-

throughs, as well as their associated personally identifying information.  Whenever a customer orders food at certain of its drive-throughs, Jimmy John's records the customer's voice, and then extracts, collects and stores in a database (located within Illinois) the customer's voiceprint, all for the purpose of increasing future sales to the customer (through greater efficiency and marketing).

5.      Each voiceprint that Defendant extracts from a customer's voice and stores in its vast biometrics database is unique to that customer, in the same way that a fingerprint uniquely identifies one and only one person.

6.      If Defendant's database of digitized voiceprints were to fall into the wrong hands, by data breach or otherwise, individuals to whom these sensitive biometric identifiers belong could have their identities stolen or their financial and other highly personal information breached and used for nefarious purposes.  BIPA confers on Plaintiffs and all other similarly situated consumers a right to know of such risks, which are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist.  Yet Defendant never adequately informed any of its customers of its biometrics collection practices, never obtained written consent from any of its customers regarding its biometric practices, and never provided any data retention or destruction policies to any of its customers.

7.      Plaintiffs bring this action to prevent Defendant from further violating Illinois law, and to recover statutory damages for Defendant's unauthorized collection, storage and use of its customers' biometrics in violation of BIPA.

## PARTIES

8.      Plaintiff Dominick Polizzi is, and has been at all relevant times, a resident and citizen of Aurora, Illinois.  Mr. Polizzi used the drive-through at multiple of Defendant's locations in Champaign, Illinois and Urbana, Illinois.

9.      Plaintiff Rachel Rabidoux is, and has been at all relevant times, a resident and citizen of Jefferson City, Tennessee.  Ms. Rabidoux used the drive through at multiple of Defendant's locations in Lafayette, Indiana and West Lafayette, Indiana.

10. Plaintiff Georgia Bain is, and has been at all relevant times, a resident and citizen of West Memphis, Arkansas.  Ms. Bain used the drive-through at Defendant's Cordova, Tennessee location.

11. Defendant is a corporation that maintains its headquarters in Champaign, Illinois. Defendant owns, operates, oversees, and controls the "Jimmy John's" brand of restaurants.

## JURISDICTION AND VENUE

12. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

13. Personal jurisdiction and venue are proper because Defendant maintains its headquarters and principal place of business in Champaign, Illinois, within this judicial District.

## FACTUAL BACKGROUND

### I. Illinois's Biometric Information Privacy Act

14. In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information."  Illinois House Transcript, 2008 Reg. Sess. No. 276.  BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

4

740 ILCS 14/15 (b).

15.     Section 15(a) of BIPA also provides:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

16.     As alleged below, Defendant's practices of collecting, storing and using Plaintiffs' and its other customers' biometric identifiers (specifically, voiceprints) and associated biometric information without informed written consent violate all three prongs of § 15(b) of BIPA.  And Defendant's failure to provide a publicly available written policy regarding its schedule and guidelines for the retention and permanent destruction of these sensitive biometric identifiers and biometric information also violates § 15(a) of BIPA.

**II.  Defendant Violates Illinois's Biometric Information Privacy Act**

17.     During the relevant time period, and in direct violation of § 15(b)(1) of BIPA, Defendant utilized technology at its drive-throughs (at numerous of its locations in Illinois and across the country) that recorded each of its customers' voices and then extracted from each voice recording a "voiceprint" that corresponds to the unique attributes of that customer's voice, such as the specific pitch, volume and duration of his or her voice (among other anatomical and acoustic factors), and then stored that voiceprint at its corporate headquarters in Illinois – all without ever informing anyone of this practice in writing.  Defendant engaged (and continues to engage) in these practices to increase its revenue, by way of better-targeted marketing and up-selling to these customers and increased drive-through operation efficiency made possible with this immutable biometric data.

18.     In direct violation of §§ 15(b)(2) and 15(b)(3) of BIPA, Defendant never informed consumers of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored and used, nor did Defendant obtain a written release from any of these individuals.

19.     In direct violation of § 15(a) of BIPA, Defendant does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information.

### III. Plaintiffs' Experiences

20.     During the relevant time period, Defendant recorded each of the Plaintiffs' voices, and extracted, collected, and stored (in Illinois) each of their voiceprints, while they placed orders at drive-throughs at one or more of Defendant's establishments.

21.     Plaintiff Polizzi used drive-throughs at Jimmy John's establishments in Champaign, Illinois and Urbana, Illinois, more than 20 times during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized.  After Defendant obtained Plaintiff Polizzi's voice recording, Defendant extracted from the recording (using technology operated from its corporate headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) his "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person.  Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Polizzi and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country. *See* 740 ILCS 14/10.

22.     Plaintiff Rabidoux used the drive-through at Jimmy John's establishments in Lafayette and West Lafayette, Indiana more than five times during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized. After Defendant obtained Plaintiff Rabidoux's voice recording, Defendant extracted from the recording (using technology operated from its corporate

headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) her "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person.  Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Rabidoux and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country.  *See* 740 ILCS 14/10.

23.     Plaintiff Bain used the drive-through at Jimmy John's establishments in Cordova, Tennessee during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized. After Defendant obtained Plaintiff Bain's voice recording, Defendant extracted from the recording (using technology operated from its corporate headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) her "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person.  Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Bain and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country.  *See* 740 ILCS 14/10.

24.     After collecting each of the Plaintiff's voiceprints, Defendant, from within Illinois, stored and catalogued each of their voiceprints in a vast electronic database of personally identifying biometric data located at its corporate headquarters in Champaign, Illinois.

25.     Plaintiffs are informed and believe, and thereupon allege, that Defendant developed and used the technology that extracted and stored Plaintiffs' and its other customers' biometric identifiers and biometric information at issue in this case from within Illinois, at its corporate headquarters in Champaign, Illinois.

26.     With technology operated and maintained by Defendant at its corporate headquarters in Illinois, Defendant has used (and continues to use) the voiceprints it collected from Plaintiffs and its other customers to, *inter alia*, identify these customers when they are placing a new order, track their ordering habits, market products to them, and otherwise generate revenue

from them more efficiently, all of which Defendant does from within Illinois.  This technology works by comparing the voiceprints of customers whose voices are recorded while placing an order at a drive-through with the voiceprints already saved in Defendant's vast biometrics database. Specifically, when one of the Plaintiffs' or another of Defendant's customers' voices is recorded at one of Defendant's drive-throughs, Defendant's sophisticated voice recognition technology, located in Illinois, extracts from the recording a voiceprint for the customer's voice and then compares the generated voiceprint against the voiceprints already stored in its database, which is also located in Illinois.  If there is a match, then Defendant is able to confirm the identity of the customer using its platform, which operates from servers located in Illinois, enabling Defendant to track the customer's ordering habits and better market and sell products to the customer, as well as further improve the quality of the customer's voiceprint stored in its Illinois-based database.

27.    Plaintiffs are informed and believe, and thereupon allege, that the unique voiceprints that Defendant has collected from Plaintiffs and other customers across the country are not only used by Defendant to identify these customers by name, they are also used by Defendant to recognize the customer's gender, age, and location, tasks that Defendant also performs using technology at its corporate headquarters in Illinois.  Accordingly, Defendant collected, from within Illinois, the "biometric information" of Plaintiffs and its other customers whose voices were recorded, and whose voiceprints extracted from such recordings, while frequenting Defendant's drive-throughs in Illinois and across the country where this invasive technology is utilized.  *See* 740 ILCS 14/10.

28.    Defendant never provided any of the Plaintiffs or its other customers with, nor did any of the Plaintiffs or its other customers ever sign, a written release allowing Defendant to collect or store their unique biometric identifiers or biometric information. From its corporate headquarters in Illinois, Defendant could have, but failed to, provide Plaintiffs and its other customers with such written releases to sign. And the written releases that Defendant should have asked Plaintiffs and Defendant's other customers to sign prior to collecting and storing their biometrics would have been provided by any willing customers to Defendant at its corporate

headquarters in Illinois. Accordingly, Defendant failed, from its corporate headquarters in Illinois, to obtain the requisite written releases prior to collecting and storing Plaintiffs' and its other customers' biometrics.

29.     Further, none of the Plaintiffs or Defendant's other customers ever consented, agreed or gave permission – written or otherwise – to Defendant for the collection or storage of their unique biometric identifiers or biometric information. Thus, Defendant also failed, from its corporate headquarters in Illinois, to obtain any other form of consent prior to collecting and storing Plaintiffs' and its other customers' biometrics.

30.     Likewise, prior collecting their voiceprints and associated personally identifying information, Defendant never published the requisite policies or disclosures or provided Plaintiffs or its other customers an opportunity to prohibit or prevent the collection, storage or use of their unique biometric identifiers or biometric information. From its corporate headquarters in Illinois, Defendant could have, but failed, to publish such policies and disclosures and to provide Plaintiffs and its other customers an opportunity to prohibit or prevent the collection, storage or use of their unique biometric identifiers or biometric information. Accordingly, Defendant failed, from its corporate headquarters in Illinois, to publish such policies and disclosures and to provide Plaintiffs and its other customers an opportunity to prohibit or prevent the collection, storage or use of their unique biometric identifiers or biometric information.

31.     By collecting Plaintiffs' unique biometric identifiers or biometric information without their consent, written or otherwise, from within Illinois, Defendant invaded Plaintiffs' statutorily protected rights to maintain control over their biometrics.

32.     Finally, Defendant never provided Plaintiffs with a retention schedule and/or guidelines for permanently destroying their biometric identifiers and biometric information.

## CLASS ALLEGATIONS

33.     **Class Definitions**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of two classes of similarly situated individuals.

34.     All Plaintiffs bring this action on behalf of the "Nationwide Class," defined as follows:

> All individuals who had their voiceprint collected, captured, received, or otherwise obtained by Defendant as a result of placing an order at a drive-through at one of Defendant's establishments in the United States.

35.     Additionally, Plaintiff Polizzi brings this action on behalf of the "Illinois Class," defined as follows:

> All individuals who had their voiceprint collected, captured, received, or otherwise obtained by Defendant as a result of placing an order at a drive-through at one of Defendant's establishments in Illinois.

36.     The Nationwide Class and Illinois Class are referred to collectively as "the Classes."

37.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38.     Plaintiffs reserve the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

39.     Plaintiffs and all Class members have been impacted and harmed by the acts of Defendant or its affiliates, agents, or subsidiaries acting on its behalf.

40.     This Class Action Complaint seeks injunctive relief and monetary damages.

41.     Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the BIPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

42.     This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

43.     On application by Plaintiffs' counsel for class certification, Plaintiffs may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

44.     **Numerosity**: The number of persons within the Classes is substantial, believed to amount to be in at least the thousands of persons. It is, therefore, impractical to join each member of the Classes as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendant's records.

45.     **Typicality**:  The claims of the named Plaintiffs are typical of the claims of members of the Classes because Plaintiffs and all members of the proposed Classes have suffered similar injuries as a result of the same practices alleged herein. Plaintiffs have no interests to advance adverse to the interests of the other members of the proposed Classes.

46.     **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions

affecting only individual members of the Classes. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a)   whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' voiceprints in Illinois;

(b)   whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' biometric identifiers or biometric information in Illinois;

(c)   whether Defendant stored Plaintiffs' and the Classes' biometric identifiers or biometric information in Illinois;

(d)   whether Defendant, from its headquarters in Illinois, properly informed Plaintiffs and the Classes that it collected, used, and stored their biometric identifiers or biometric information;

(e)   whether Defendant, at its headquarters in Illinois, obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiffs' and the Classes' biometric identifiers or biometric information;

(f)   whether Defendant, from its headquarters in Illinois, developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(g)   whether Plaintiffs' and the Classes' biometric information that Defendant collected was capable of identifying them; and

(h)   whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

47.   **Adequate Representation**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action

litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this class action.
Moreover, Plaintiffs fairly and adequately represent and protect the interests of the Classes.
Neither Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of
the absent members of the Classes.  Plaintiffs have raised viable statutory claims of the type
reasonably expected to be raised by members of the Classes, and will vigorously pursue those
claims.  If necessary, Plaintiffs may seek leave of this Court to amend this Second Amended Class
Action Complaint to include additional Class representatives to represent the Classes or additional
claims as may be appropriate.

48.     **Superiority**: A class action is superior to other available methods for the fair and
efficient adjudication of this controversy because individual litigation of the claims of all members
of the Classes is impracticable.  Even if every member of the Classes could afford to pursue
individual litigation, the Court system could not.  It would be unduly burdensome to the courts in
which individual litigation of numerous cases would proceed.  Individualized litigation would also
present the potential for varying, inconsistent or contradictory judgments, and would magnify the
delay and expense to all parties and to the court system resulting from multiple trials of the same
factual issues.  By contrast, the maintenance of this action as a class action, with respect to some
or all of the issues presented herein, presents few management difficulties, conserves the resources
of the parties and of the court system and protects the rights of each member of the Classes.
Plaintiffs anticipate no difficulty in the management of this action as a class action.  Class-wide
relief is essential to compel compliance with BIPA.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq*.**
**(By all Plaintiffs Individually and on Behalf of the Nationwide Class)**

49.     All Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

50.     BIPA makes it unlawful for any private entity to, among other things, "collect,
capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric
identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a
biometric identifier or biometric information is being collected or stored; (2) informs the subject

13

. . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."  740 ILCS 14/15(b).

51.    Defendant is an Illinois-based corporation and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

52.    Plaintiffs and the Nationwide Class members are individuals who had their voiceprints, i.e., "biometric identifiers," collected by Defendant (via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois).  *See* 740 ILCS 14/10.

53.    Plaintiffs and the Nationwide Class members are individuals who had their "biometric information" collected by Defendant (via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois) in the form of digitally encrypted code, derived from Plaintiffs' and the Nationwide Class members' voiceprints, that uniquely identifies the individual to whom a particular voiceprint belongs.

54.    Defendant systematically collected, used, and stored Plaintiffs' and the Nationwide Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3) – written releases that should have been, but were not, obtained by Defendant from its corporate headquarters in Illinois.

55.    In fact, Defendant failed to properly inform Plaintiffs or the Nationwide Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendant inform Plaintiffs or the Nationwide Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2) – policies and disclosures that should have been, but were not, made by Defendant from its corporate headquarters in Illinois.

56. In addition, Defendant failed to publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs or the Nationwide Class members, as required by BIPA – a schedule and guidelines that should have been, but were not, provided by Defendant from its corporate headquarters in Illinois. *See* 740 ILCS 14/15(a). The failure by Defendant to provide Plaintiffs and the Nationwide Class members with a retention schedule or guidelines for permanently destroying Plaintiffs' or the Nationwide Class members' biometric identifiers or biometric information constitutes an independent violation of the statute that occurred in Illinois.

57. Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiffs' and/or the Nationwide Class's biometric identifiers and biometric information as described herein constitutes a separate violation of the statute and of the right of Plaintiffs and each Nationwide Class member to maintain control over these biometric identifiers and biometric information, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

58. On behalf of themselves and the proposed Nationwide Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) (or, alternatively, of $5,000.00 for each and every violation of BIPA to the extent committed intentionally or recklessly pursuant to 740 ILCS 14/20(2)); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

G. Awarding such other and further relief as equity and justice may require.

**SECOND CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(By Plaintiff Polizzi Individually and on Behalf of the Illinois Class)**

59. Plaintiff Polizzi incorporates the foregoing allegations as if fully set forth herein.

60.     BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."  740 ILCS 14/15(b).

61.     Defendant is a corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

62.     Plaintiff Polizzi and the Illinois Class members are individuals who had their voiceprints, i.e., "biometric identifiers," collected by Defendant (while they were located and physically present in Illinois, via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois).  *See* 740 ILCS 14/10.

63.     Plaintiff Polizzi and the Illinois Class members are individuals in Illinois who had their "biometric information" collected by Defendant (while they were located and physically present in Illinois, via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois) in the form of digitally encrypted code, derived from Plaintiff Polizzi's and the Illinois Class members' voiceprints, that uniquely identifies the individual to whom a particular voiceprint belongs.

64.     Defendant systematically collected, used, and stored Plaintiff Polizzi's and the Illinois Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3) – written releases that should have been, but were not, obtained by Defendant from its corporate headquarters in Illinois.

65.     In fact, Defendant failed to properly inform Plaintiff Polizzi or the Illinois Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendant inform Plaintiff Polizzi or the Illinois Class

members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2) – policies and disclosures that should have been, but were not, made by Defendant from its corporate headquarters in Illinois.

66.     In addition, Defendant does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff Polizzi or the Illinois Class, as required by BIPA – a schedule and guidelines that should have been, but were not, provided by Defendant from its corporate headquarters in Illinois. *See* 740 ILCS 14/15(a). The failure by Defendant to provide Plaintiff Polizzi and the Illinois Class members with a retention schedule or guidelines for permanently destroying Plaintiffs' or the Nationwide Class members' biometric identifiers or biometric information constitutes an independent violation of the statute that occurred in Illinois.

67.     Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiff Polizzi's and the Illinois Class members' biometric identifiers and biometric information as described herein constitutes a separate violation of the statute and of the right of Plaintiff Polizzi and each Illinois Class member to maintain control over these biometric identifiers and biometric information, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

68.     On behalf of himself and the proposed Illinois Class, Plaintiff Polizzi seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Illinois Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) (or, alternatively, of $5,000.00 for each and every violation of BIPA to the extent committed intentionally or recklessly pursuant to 740 ILCS 14/20(2)); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that this Court enter an Order:

A.      Certifying this case as a class action on behalf of the Classes defined above, appointing all Plaintiffs as representatives of the Nationwide Class, appointing Plaintiff Polizzi as representative of the Illinois Class, and appointing Plaintiffs' counsel as counsel to represent the Classes;

B.      Declaring that Defendant's actions, as set out above, violate BIPA, 740 ILCS l4/1, *et seq.*;

C.      Awarding statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) (or, alternatively, of $5,000.00 for each and every violation of BIPA to the extent committed intentionally or recklessly pursuant to 740 ILCS 14/20(2));

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Classes, including, *inter alia*, an order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

E.      Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: September 29, 2023                    Respectfully submitted,

                                                             /s/   *Carl V. Malmstrom*

                                                             **WOLF HALDENSTEIN ADLER**
                                                             **  FREEMAN & HERZ LLC**
                                                             ARDC No. 6295219
                                                             Carl V. Malmstrom
                                                             111 W. Jackson Blvd., Suite 1700

Chicago, IL 60604
Tel:  (312) 391-5059
Fax: (212) 686-0114
malmstrom@whafh.com

*Local Counsel for Plaintiff and the Putative Class*

**HEDIN HALL LLP**
Frank S. Hedin*
Arun G. Ravindran*
1395 Brickell Avenue, Ste 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801
E-mail: fhedin@hedinhall.com
         aravindran@hedinhall.com

*Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff and the Putative Class*