**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| DOMINICK POLIZZI, RACHEL ROBIDOUX, and GEORGIA BAIN, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | Case No. 2:23-cv-02168-CSB-EIL |
| Plaintiffs, | ) ) | Hon. Judge Colin S. Bruce |
| v. | ) ) ) | Hon. Magistrate Eric I. Long |
| JIMMY JOHN'S LLC, | ) ) | |
| Defendant. | ) | |

### DEFENDANT JIMMY JOHN'S LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Jimmy John's LLC, ("Defendant"), by its counsel, states as and for its Answer and Affirmative Defenses to the Second Amended Class Action Complaint filed by Plaintiffs' Dominick Polizzi, Rachel Robidoux, and Georgia Bain (collectively, "Plaintiffs"), as follows:

### NATURE OF ACTION

1.     Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing and using Plaintiffs' and other similarly situated individuals' biometric identifiers and biometric information (referred to collectively at times as "biometrics") without obtaining the requisite prior informed written consent or providing the requisite data retention and destruction policies, in direct violation of BIPA.

**ANSWER:** Defendant admits only that Plaintiffs have brought an action seeking damages and other legal and equitable remedies.  Answering further, Defendant denies that it ever collected, stored, or used Plaintiffs' or other individuals' biometrics, and therefore, Defendant denies the remaining allegations in Paragraph 1.

2.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse,

is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." Id.

    **ANSWER:**  Defendant admits only that this Paragraph 2 partially quotes a subsection of BIPA, which is a written statute that speaks for itself.  Except as expressly admitted, the remaining allegations of this paragraph are legal conclusions to which no answer is required and are otherwise denied.

    3.    In recognition of these concerns over the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, inter alia, that a private entity like Defendant may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, see id.; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, see id.; (3) receives a written release from the person for the collection of his or her biometric identifiers or information, see id.; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, see 740 ILCS 14/15(a). Further, the entity must store, transmit and protect an individual's biometric identifiers and biometric information using the same standard of care in the industry and in a manner at least as protective as the means used to protect other confidential and sensitive information. Id. 14/15(e). Finally, the entity is expressly prohibited from selling, leasing, trading or otherwise profiting from the individual's biometrics. Id. 15/15(c) [*sic*].

    **ANSWER:**  Defendant admits only that this Paragraph 3 partially summarizes a subsection of BIPA, which is a written statute that speaks for itself.  Except as expressly admitted, the remaining allegations of this paragraph are legal conclusions to which no answer is required and are otherwise denied.

    4.    In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of BIPA, Defendant is actively collecting, storing, and using – without providing notice, obtaining informed written consent or publishing data retention policies – the "voiceprints" (unique, immutable, and highly sensitive biometric identifiers used to identify persons) of thousands and perhaps millions of its customers nationwide who have utilized one of Defendant's drive-throughs, as well as their associated personally identifying information. Whenever a customer orders food at certain of its drive-throughs, Jimmy John's records the customer's voice, and then extracts, collects and stores in a database (located within Illinois) the customer's voiceprint, all for the purpose of increasing future sales to the customer (through greater efficiency and marketing).

    **ANSWER:**  Defendant denies the allegations in Paragraph 4.  Answering further, Defendant does not extract, collect or store customers' voiceprint for any purpose.

5.     Each voiceprint that Defendant extracts from a customer's voice and stores in its vast biometrics database is unique to that customer, in the same way that a fingerprint uniquely identifies one and only one person.

**ANSWER:**    Defendant denies the allegations in Paragraph 5.    Answering further,

Defendant does not extract, collect or store customers' voiceprint for any purpose.

6.     If Defendant's database of digitized voiceprints were to fall into the wrong hands, by data breach or otherwise, individuals to whom these sensitive biometric identifiers belong could have their identities stolen or their financial and other highly personal information breached and used for nefarious purposes. BIPA confers on Plaintiffs and all other similarly situated consumers a right to know of such risks, which are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist. Yet Defendant never adequately informed any of its customers of its biometrics collection practices, never obtained written consent from any of its customers regarding its biometric practices, and never provided any data retention or destruction policies to any of its customers.

**ANSWER:**    Defendant denies the allegations in Paragraph 6.    Answering further,

Defendant does not extract, collect or store customers' voiceprint for any purpose.

7.     Plaintiffs bring this action to prevent Defendant from further violating Illinois law, and to recover statutory damages for Defendant's unauthorized collection, storage and use of its customers' biometrics in violation of BIPA.

**ANSWER:** Defendant admits only that Plaintiffs have brought an action seeking damages

and other legal and equitable remedies.  Answering further, Defendant denies that it ever collected,

stored, or used Plaintiffs' or other individuals' biometrics, and therefore, Defendant denies the

remaining allegations in Paragraph 7.

## PARTIES

8.     Plaintiff Dominick Polizzi is, and has been at all relevant times, a resident and citizen of Aurora, Illinois. Mr. Polizzi used the drive-through at multiple of Defendant's locations in Champaign, Illinois and Urbana, Illinois.

**ANSWER:** Defendant lacks sufficient information or knowledge regarding the allegations

in Paragraph 8 and on that basis denies the allegations.

9.     Plaintiff Rachel Rabidoux is, and has been at all relevant times, a resident and citizen of Jefferson City, Tennessee. Ms. Rabidoux used the drive through at multiple of Defendant's locations in Lafayette, Indiana and West Lafayette, Indiana.

**ANSWER:** Defendant lacks sufficient information or knowledge regarding the allegations in Paragraph 9 and on that basis denies the allegations.

10.    Plaintiff Georgia Bain is, and has been at all relevant times, a resident and citizen of West Memphis, Arkansas. Ms. Bain used the drive-through at Defendant's Cordova, Tennessee location.

**ANSWER:** Defendant lacks sufficient information or knowledge regarding the allegations in Paragraph 10 and on that basis denies the allegations.

11.    Defendant is a corporation that maintains its headquarters in Champaign, Illinois. Defendant owns, operates, oversees, and controls the "Jimmy John's" brand of restaurants.

**ANSWER:** Defendant (Jimmy Johns, *LLC*) denies that it is a corporation. Answering further, Defendant admits it maintains its headquarters in Champaign, Illinois. Defendant denies the allegations in the second sentence of Paragraph 11.

## JURISDICTION AND VENUE

12.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

**ANSWER:** The allegations of this Paragraph 12 are legal conclusions to which no answer is required. Answering further, Defendant removed this civil action to this Court pursuant to 28 U.S.C. §§ 1441, 1446 & 1453(b), and therefore, Defendant maintains that this Court has subject matter jurisdiction over this action. *See also* Defendant's FRCP 7.1 Disclosure Statement (ECF No. 25.)

13.    Personal jurisdiction and venue are proper because Defendant maintains its headquarters and principal place of business in Champaign, Illinois, within this judicial District.

**ANSWER:** The allegations of this Paragraph 13 are legal conclusions to which no answer is required. Answering further, Defendant admits that venue is proper in this Court.

## FACTUAL BACKGROUND

**I.**    **Illinois's Biometric Information Privacy Act**

14.    In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA makes it unlawful for a company to, inter alia, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric  identifier or biometric information is being collected or stored;

> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

**ANSWER:**    Defendant admits only that Paragraph 14 paraphrases the provisions of subsection 15(b) of BIPA, but denies that Plaintiffs have accurately paraphrased BIPA, and further responds that the text of BIPA stands for itself and that no further answer is required.

15.    Section 15(a) of BIPA also provides:
A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

**ANSWER:**    Defendant admits only that Paragraph 15 paraphrases the provisions of subsection 15(b) of BIPA, but denies that Plaintiffs have accurately paraphrased BIPA, and further responds that the text of BIPA stands for itself and that no further answer is required.

16.    As alleged below, Defendant's practices of collecting, storing and using Plaintiffs' and its other customers' biometric identifiers (specifically, voiceprints) and associated biometric information without informed written consent violate all three prongs of § 15(b) of BIPA. And Defendant's failure to provide a publicly available written policy regarding its schedule and

guidelines for the retention and permanent destruction of these sensitive biometric identifiers and biometric information also violates § 15(a) of BIPA.

**ANSWER:**  Defendant denies the allegations in Paragraph 16.  Answering further, Defendant does not extract, collect or store customers' voiceprint for any purpose.

## II.    Defendant Violates Illinois's Biometric Information Privacy Act

17.    During the relevant time period, and in direct violation of § 15(b)(1) of BIPA, Defendant utilized technology at its drive-throughs (at numerous of its locations in Illinois and across the country) that recorded each of its customers' voices and then extracted from each voice recording a "voiceprint" that corresponds to the unique attributes of that customer's voice, such as the specific pitch, volume and duration of his or her voice (among other anatomical and acoustic factors), and then stored that voiceprint at its corporate headquarters in Illinois – all without ever informing anyone of this practice in writing. Defendant engaged (and continues to engage) in these practices to increase its revenue, by way of better-targeted marketing and upselling to these customers and increased drive-through operation efficiency made possible with this immutable biometric data.

**ANSWER:**  Defendant denies the allegations in Paragraph 17.  Answering further, Defendant does not extract, collect or store customers' voiceprints for any purpose.  Answering further, Defendant has never used biometric technology to extract voiceprints from customers at drive-through restaurants.

18.    In direct violation of §§ 15(b)(2) and 15(b)(3) of BIPA, Defendant never informed consumers of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored and used, nor did Defendant obtain a written release from any of these individuals.

**ANSWER:**  Defendant denies the allegations in Paragraph 18.  Answering further, Defendant does not extract, collect or store customers' voiceprints for any purpose.  Answering further, Defendant has never used biometric technology to extract voiceprints from customers at drive-through restaurants.

19.    In direct violation of § 15(a) of BIPA, Defendant does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information.

**ANSWER:** Defendant denies the allegations in Paragraph 19. Answering further, Defendant does not extract, collect or store customers' voiceprint for any purpose. Answering further, Defendant has never used biometric technology to extract voiceprints from customers at drive-through restaurants.

### III. Plaintiffs' Experiences

20. During the relevant time period, Defendant recorded each of the Plaintiffs' voices, and extracted, collected, and stored (in Illinois) each of their voiceprints, while they placed orders at drive-throughs at one or more of Defendant's establishments.

**ANSWER:** Defendant denies the allegations in Paragraph 20. Answering further, Defendant does not extract, collect or store customers' voiceprints for any purpose. Answering further, Defendant did not use biometric technology to extract voiceprints from any of the Plaintiffs at drive-through restaurants.

21. Plaintiff Polizzi used drive-throughs at Jimmy John's establishments in Champaign, Illinois and Urbana, Illinois, more than 20 times during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized. After Defendant obtained Plaintiff Polizzi's voice recording, Defendant extracted from the recording (using technology operated from its corporate headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) his "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person. Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Polizzi and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country. See 740 ILCS 14/10.

**ANSWER:** Defendant lacks sufficient information or knowledge regarding the allegations in the first sentence of Paragraph 21, and on that basis denies the allegations in the first sentence. Answering further, Defendant denies all the remaining allegations in Paragraph 21. Answering further, Defendant did not use biometric technology to extract any voiceprint from Plaintiff Polizzi at any drive-through restaurant.

22. Plaintiff Rabidoux used the drive-through at Jimmy John's establishments in Lafayette and West Lafayette, Indiana more than five times during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint

technology was utilized. After Defendant obtained Plaintiff Rabidoux's voice recording, Defendant extracted from the recording (using technology operated from its corporate headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) her "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person. Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Rabidoux and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country. See 740 ILCS 14/10.

**ANSWER:** Defendant lacks sufficient information or knowledge regarding the allegations in the first sentence of Paragraph 22, and on that basis denies the allegations in the first sentence. Answering further, Defendant denies all the remaining allegations in Paragraph 22. Answering further, Defendant did not use biometric technology to extract any voiceprint from Plaintiff Rabidoux at any drive-through restaurant.

23.    Plaintiff Bain used the drive-through at Jimmy John's establishments in Cordova, Tennessee during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized. After Defendant obtained Plaintiff Bain's voice recording, Defendant extracted from the recording (using technology operated from its corporate headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) her "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person. Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Bain and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country. See 740 ILCS 14/10.

**ANSWER:** Defendant lacks sufficient information or knowledge regarding the allegations in the first sentence of Paragraph 23, and on that basis denies the allegations in the first sentence. Answering further, Defendant denies all the remaining allegations in Paragraph 23. Answering further, Defendant did not use biometric technology to extract any voiceprint from Plaintiff Bain at any drive-through restaurant.

24.    After collecting each of the Plaintiff's voiceprints, Defendant, from within Illinois, stored and catalogued each of their voiceprints in a vast electronic database of personally identifying biometric data located at its corporate headquarters in Champaign, Illinois.

**ANSWER:** Defendant denies the allegations in Paragraph 24. Answering further, Defendant does not extract, collect or store customers' voiceprints for any purpose. Answering

further, Defendant has never used biometric technology to extract voiceprints from any of the

Plaintiffs at drive-through restaurants.

25.    Plaintiffs are informed and believe, and thereupon allege, that Defendant developed and used the technology that extracted and stored Plaintiffs' and its other customers' biometric identifiers and biometric information at issue in this case from within Illinois, at its corporate headquarters in Champaign, Illinois.

**ANSWER:**  Defendant denies the allegations in Paragraph 25.  Answering further,

Defendant does not extract, collect or store customers' voiceprints for any purpose.

26.    With technology operated and maintained by Defendant at its corporate headquarters in Illinois, Defendant has used (and continues to use) the voiceprints it collected from Plaintiffs and its other customers to, inter alia, identify these customers when they are placing a new order, track their ordering habits, market products to them, and otherwise generate revenue from them more efficiently, all of which Defendant does from within Illinois. This technology works by comparing the voiceprints of customers whose voices are recorded while placing an order at a drive-through with the voiceprints already saved in Defendant's vast biometrics database. Specifically, when one of the Plaintiffs' or another of Defendant's customers' voices is recorded at one of Defendant's drive-throughs, Defendant's sophisticated voice recognition technology, located in Illinois, extracts from the recording a voiceprint for the customer's voice and then compares the generated voiceprint against the voiceprints already stored in its database, which is also located in Illinois. If there is a match, then Defendant is able to confirm the identity of the customer using its platform, which operates from servers located in Illinois, enabling Defendant to track the customer's ordering habits and better market and sell products to the customer, as well as further improve the quality of the customer's voiceprint stored in its Illinois-based database.

**ANSWER:**  Defendant denies the allegations in Paragraph 26.  Answering further,

Defendant does not extract, collect or store customers' voiceprints for any purpose.  Answering

further, Defendant did not use biometric technology to extract voiceprints from any of the Plaintiffs

at drive-through restaurants.

27.    Plaintiffs are informed and believe, and thereupon allege, that the unique voiceprints that Defendant has collected from Plaintiffs and other customers across the country are not only used by Defendant to identify these customers by name, they are also used by Defendant to recognize the customer's gender, age, and location, tasks that Defendant also performs using technology at its corporate headquarters in Illinois. Accordingly, Defendant collected, from within Illinois, the "biometric information" of Plaintiffs and its other customers whose voices were recorded, and whose voiceprints extracted from such recordings, while frequenting Defendant's drive-throughs in Illinois and across the country where this invasive technology is utilized. See 740 ILCS 14/10.

**ANSWER:**   Defendant denies the allegations in Paragraph 27.   Answering further, Defendant does not extract, collect or store customers' voiceprints for any purpose.   Answering further, Defendant did not use biometric technology to extract voiceprints from any of the Plaintiffs at drive-through restaurants.

28.     Defendant never provided any of the Plaintiffs or its other customers with, nor did any of the Plaintiffs or its other customers ever sign, a written release allowing Defendant to collect or store their unique biometric identifiers or biometric information. From its corporate headquarters in Illinois, Defendant could have, but failed to, provide Plaintiffs and its other customers with such written releases to sign. And the written releases that Defendant should have asked Plaintiffs and Defendant's other customers to sign prior to collecting and storing their biometrics would have been provided by any willing customers to Defendant at its corporate headquarters in Illinois. Accordingly, Defendant failed, from its corporate headquarters in Illinois, to obtain the requisite written releases prior to collecting and storing Plaintiffs' and its other customers' biometrics.

**ANSWER:**   Defendant denies the allegations in Paragraph 28.   Answering further, Defendant does not extract, collect or store customers' voiceprints for any purpose.   Answering further, Defendant did not use biometric technology to extract voiceprints from any of the Plaintiffs at drive-through restaurants.

29.     Further, none of the Plaintiffs or Defendant's other customers ever consented, agreed or gave permission – written or otherwise – to Defendant for the collection or storage of their unique biometric identifiers or biometric information. Thus, Defendant also failed, from its corporate headquarters in Illinois, to obtain any other form of consent prior to collecting and storing Plaintiffs' and its other customers' biometrics.

**ANSWER:** Responding to the first sentence of Paragraph 29, Defendant admits only that none of the Plaintiffs nor Defendant's other customers ever consented, agreed or gave permission – written or otherwise – to Defendant for the collection or storage of their unique biometric identifiers or biometric information—*because Defendant does not store, collect, or otherwise obtain biometric identifiers or biometric information from any of its customers, including Plaintiffs*.   Answering further, Defendant also admits that it did not obtain any other form of consent from Plaintiffs—*again, because Defendant does not store, collect, or otherwise obtain*

*biometric identifiers or biometric information from any of its customers, including Plaintiffs.*  As

such, Defendant was not required to obtain written consent from individuals because Defendant

does not use biometric technology to obtain voiceprints from customers in the first instance.

30.     Likewise, prior collecting their voiceprints and associated personally identifying
information, Defendant never published the requisite policies or disclosures or provided Plaintiffs
or its other customers an opportunity to prohibit or prevent the collection, storage or use of their
unique biometric identifiers or biometric information. From its corporate headquarters in Illinois,
Defendant could have, but failed, to publish such policies and disclosures and to provide Plaintiffs
and its other customers an opportunity to prohibit or prevent the collection, storage or use of their
unique biometric identifiers or biometric information. Accordingly, Defendant failed, from its
corporate headquarters in Illinois, to publish such policies and disclosures and to provide Plaintiffs
and its other customers an opportunity to prohibit or prevent the collection, storage or use of their
unique biometric identifiers or biometric information.

**ANSWER:**  Defendant admits only that it never published any policies or disclosures

relating to the collection, storage or use of its customers' (including Plaintiffs') biometric

identifiers or biometric information—*because Defendant does not store, collect, or otherwise*

*obtain biometric identifiers or biometric information from any of its customers, including*

*Plaintiffs.*  As such, Defendant was not required to publish any policies or disclosures regarding

its nonexistent use of biometric voiceprint technology at Jimmy John's drive-throughs.

31.     By collecting Plaintiffs' unique biometric identifiers or biometric information
without their consent, written or otherwise, from within Illinois, Defendant invaded Plaintiffs'
statutorily protected rights to maintain control over their biometrics.

**ANSWER:**  Defendant denies the allegations in Paragraph 31.   Answering further,

Defendant did not collect any Plaintiff's unique biometric identifiers or biometric information.  As

such, Defendant was not required to obtain consent from Plaintiffs' regarding its nonexistent use

of biometric voiceprint technology at Jimmy John's drive-throughs.

32.     Finally, Defendant never provided Plaintiffs with a retention schedule and/or
guidelines for permanently destroying their biometric identifiers and biometric information.

**ANSWER:**  Defendant admits only that it never provided Plaintiffs with a retention

schedule or guidelines for permanent destruction of biometrics—*because Defendant did not store,*

*collect, or otherwise obtain biometric identifiers or biometric information from any of its*

*customers, including Plaintiffs*.  As such, Defendant was not required to provide Plaintiffs with

any such schedules or guidelines.

## CLASS ALLEGATIONS

33.    **Class Definitions:** Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on
behalf of two classes of similarly situated individuals.

**ANSWER:**  Defendant admits that Plaintiffs bring this action on behalf of two putative

classes pursuant to Fed. R. Civ. P. 23, but Defendant denies that any class should be certified here

and denies all remaining allegations.

34.    All Plaintiffs bring this action on behalf of the "Nationwide Class," defined as
follows:

> All individuals who had their voiceprint collected, captured, received, or otherwise
> obtained by Defendant as a result of placing an order at a drive-through at one of
> Defendant's establishments in the United States.

**ANSWER:**  Defendant admits that Plaintiffs bring this action on behalf of a putative class

as defined in Paragraph 34, but Defendant denies that any "Nationwide Class" should be certified

here and denies all remaining allegations.

35.    Additionally, Plaintiff Polizzi brings this action on behalf of the "Illinois Class,"
defined as follows:

> All individuals who had their voiceprint collected, captured, received, or otherwise
> obtained by Defendant as a result of placing an order at a drive-through at one of
> Defendant's establishments in Illinois.

**ANSWER:**  Defendant admits that Plaintiff Polizzi bring this action on behalf of a putative

class as defined in Paragraph 35, but Defendant denies that any "Illinois Class" should be certified

here and denies all remaining allegations.

36.    The Nationwide Class and Illinois Class are referred to collectively as "the
Classes."

**ANSWER:**  Defendant admits that Plaintiffs bring this action on behalf of two putative classes pursuant to Fed. R. Civ. P. 23, but Defendant denies that any class should be certified here and denies all remaining allegations.

37.    The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:**  Defendant admits that Plaintiffs seek to exclude the aforementioned people from the putative classes, but Defendant denies that any class should be certified here and denies all remaining allegations.

38.    Plaintiffs reserve the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

**ANSWER:**  Paragraph 38 contains legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations in Paragraph 38.

39.    Plaintiffs and all Class members have been impacted and harmed by the acts of Defendant or its affiliates, agents, or subsidiaries acting on its behalf.

**ANSWER:**  Defendant denies the allegations in Paragraph 39.

40.    This Class Action Complaint seeks injunctive relief and monetary damages.

**ANSWER:**  Defendant admits that Plaintiffs seek injunctive relief and monetary damages, but Defendant denies there is an legal or factual basis for such requested relief.

41.    Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the BIPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**ANSWER:**  Defendant denies the allegations in Paragraph 41.

42.     This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

**ANSWER:**  Defendant denies the allegations in Paragraph 42.

43.     On application by Plaintiffs' counsel for class certification, Plaintiffs may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

**ANSWER:**  Paragraph 43 contains legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations in Paragraph 43.

44.     **Numerosity**: The number of persons within the Classes is substantial, believed to amount to be in at least the thousands of persons. It is, therefore, impractical to join each member of the Classes as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendant's records.

**ANSWER:**  Paragraph 44 contains legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations in Paragraph 44.

45.     **Typicality:** The claims of the named Plaintiffs are typical of the claims of members of the Classes because Plaintiffs and all members of the proposed Classes have suffered similar injuries as a result of the same practices alleged herein. Plaintiffs have no interests to advance adverse to the interests of the other members of the proposed Classes.

**ANSWER:**  Paragraph 45 contains legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations in Paragraph 45.

46.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a) whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' voiceprints in Illinois;

(b) whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' biometric identifiers or biometric information in Illinois;

-14-

(c) whether Defendant stored Plaintiffs' and the Classes' biometric identifiers or biometric information in Illinois;

(d) whether Defendant, from its headquarters in Illinois, properly informed Plaintiffs and the Classes that it collected, used, and stored their biometric identifiers or biometric information;

(e) whether Defendant, at its headquarters in Illinois, obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiffs' and the Classes' biometric identifiers or biometric information;

(f) whether Defendant, from its headquarters in Illinois, developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(g) whether Plaintiffs' and the Classes' biometric information that Defendant collected was capable of identifying them; and

(h) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

**ANSWER:** Paragraph 46 contains legal conclusions to which no answer is required.  To

the extent an answer is required, Defendant denies the allegations in Paragraph 46.

47.     **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs fairly and adequately represent and protect the interests of the Classes. Neither Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Second Amended Class Action Complaint to include additional Class representatives to represent the Classes or additional claims as may be appropriate.

**ANSWER:** Paragraph 47 contains legal conclusions to which no answer is required.  To

the extent an answer is required, Defendant denies the allegations in Paragraph 47.

48.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also

-15-

present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with BIPA.

**ANSWER:** Paragraph 47 contains legal conclusions to which no answer is required. To

the extent an answer is required, Defendant denies the allegations in Paragraph 47.

### FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, et seq.
### (By all Plaintiffs Individually and on Behalf of the Nationwide Class)

49.     All Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:** Though no answer is required to Paragraph 49, Defendant incorporates its

previous answers as though the same were set forth at length herein.

50.     BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

**ANSWER:** Defendant admits only that Paragraph 50 paraphrases BIPA's provisions, but

denies that Plaintiffs have accurately paraphrased BIPA, and further responds that the text of BIPA

stands for itself and that no further answer is required.

51.     Defendant is an Illinois-based corporation and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

**ANSWER:** Paragraph 51 contains legal conclusions to which no answer is required. To

the extent an answer is required, Defendant denies the allegations in Paragraph 51. Answering

further, Defendant (Jimmy John's *LLC*) denies that it is a corporation.

52.     Plaintiffs and the Nationwide Class members are individuals who had their voiceprints, i.e., "biometric identifiers," collected by Defendant (via technology developed,

operated, and utilized from within Illinois) and stored by Defendant (in Illinois). See 740 ILCS 14/10.

**ANSWER:** Paragraph 52 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 52.

53. Plaintiffs and the Nationwide Class members are individuals who had their "biometric information" collected by Defendant (via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois) in the form of digitally encrypted code, derived from Plaintiffs' and the Nationwide Class members' voiceprints, that uniquely identifies the individual to whom a particular voiceprint belongs.

**ANSWER:** Paragraph 53 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 53.

54. Defendant systematically collected, used, and stored Plaintiffs' and the Nationwide Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3) – written releases that should have been, but were not, obtained by Defendant from its corporate headquarters in Illinois.

**ANSWER:** Paragraph 54 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 54.

55. In fact, Defendant failed to properly inform Plaintiffs or the Nationwide Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendant inform Plaintiffs or the Nationwide Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2) – policies and disclosures that should have been, but were not, made by Defendant from its corporate headquarters in Illinois.

**ANSWER:** Paragraph 55 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 55.

56. In addition, Defendant failed to publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs or the Nationwide Class members, as required by BIPA – a schedule and guidelines that should have been, but were not, provided by Defendant from its corporate headquarters in Illinois. See 740 ILCS 14/15(a). The failure by Defendant to provide Plaintiffs and the Nationwide Class members with a retention schedule or guidelines for permanently destroying Plaintiffs' or the Nationwide Class members' biometric identifiers or biometric information constitutes an independent violation of the statute that occurred in Illinois.

**ANSWER:**  Paragraph 56 contains legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations in Paragraph 56.

57.     Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiffs' and/or the Nationwide Class's biometric identifiers and biometric information as described herein constitutes a separate violation of the statute and of the right of Plaintiffs and each Nationwide Class member to maintain control over these biometric identifiers and biometric information, as set forth in BIPA, 740 ILCS 14/1, et seq.

**ANSWER:**  Paragraph 57 contains legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations in Paragraph 57.

58.     On behalf of themselves and the proposed Nationwide Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) (or, alternatively, of $5,000.00 for each and every violation of BIPA to the extent committed intentionally or recklessly pursuant to 740 ILCS 14/20(2)); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

G.    Awarding such other and further relief as equity and justice may require. [*sic*]

**ANSWER:**  Defendant admits that Plaintiffs demand relief, but denies that Plaintiffs are entitled to any relief or that the award of relief is proper in connection with the allegations set forth in the Second Amended Complaint, including without limitation, the relief set forth in the Prayer for Relief clause.

### SECOND CAUSE OF ACTION
### Violation of 740 ILCS 14/1, et seq.
### (By Plaintiff Polizzi Individually and on Behalf of the Illinois Class)

59.    Plaintiff Polizzi incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**  Though no answer is required to Paragraph 59, Defendant incorporates its previous answers as though the same were set forth at length herein.

60.    BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a

biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

**ANSWER:** Defendant admits only that Paragraph 60 paraphrases BIPA's provisions, but denies that Plaintiffs have accurately paraphrased BIPA, and further responds that the text of BIPA stands for itself and that no further answer is required.

61.    Defendant is a corporation and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

**ANSWER:** Paragraph 61 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 61. Answering further, Defendant (Jimmy John's *LLC*) denies that it is a corporation.

62.    Plaintiff Polizzi and the Illinois Class members are individuals who had their voiceprints, i.e., "biometric identifiers," collected by Defendant (while they were located and physically present in Illinois, via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois). See 740 ILCS 14/10.

**ANSWER:** Paragraph 62 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 62.

63.    Plaintiff Polizzi and the Illinois Class members are individuals in Illinois who had their "biometric information" collected by Defendant (while they were located and physically present in Illinois, via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois) in the form of digitally encrypted code, derived from Plaintiff Polizzi's and the Illinois Class members' voiceprints, that uniquely identifies the individual to whom a particular voiceprint belongs.

**ANSWER:** Paragraph 63 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 63.

64.    Defendant systematically collected, used, and stored Plaintiff Polizzi's and the Illinois Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3) – written releases that should have been, but were not, obtained by Defendant from its corporate headquarters in Illinois.

**ANSWER:** Paragraph 64 contains legal conclusions to which no answer is required.  To

the extent an answer is required, Defendant denies the allegations in Paragraph 64.

65.    In fact, Defendant failed to properly inform Plaintiff Polizzi or the Illinois Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendant inform Plaintiff Polizzi or the Illinois Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2) – policies and disclosures that should have been, but were not, made by Defendant from its corporate headquarters in Illinois.

**ANSWER:** Paragraph 65 contains legal conclusions to which no answer is required.  To

the extent an answer is required, Defendant denies the allegations in Paragraph 65.

66.    In addition, Defendant does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff Polizzi or the Illinois Class, as required by BIPA – a schedule and guidelines that should have been, but were not, provided by Defendant from its corporate headquarters in Illinois. See 740 ILCS 14/15(a). The failure by Defendant to provide Plaintiff Polizzi and the Illinois Class members with a retention schedule or guidelines for permanently destroying Plaintiffs' or the Nationwide Class members' biometric identifiers or biometric information constitutes an independent violation of the statute that occurred in Illinois.

**ANSWER:** Paragraph 66 contains legal conclusions to which no answer is required.  To

the extent an answer is required, Defendant denies the allegations in Paragraph 66.

67.    Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiff Polizzi's and the Illinois Class members' biometric identifiers and biometric information as described herein constitutes a separate violation of the statute and of the right of Plaintiff Polizzi and each Illinois Class member to maintain control over these biometric identifiers and biometric information, as set forth in BIPA, 740 ILCS 14/1, et seq.

**ANSWER:** Paragraph 67 contains legal conclusions to which no answer is required.  To

the extent an answer is required, Defendant denies the allegations in Paragraph 67.

68.    On behalf of himself and the proposed Illinois Class, Plaintiff Polizzi seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Illinois Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) (or, alternatively, of $5,000.00 for each and every violation of BIPA to the extent committed

intentionally or recklessly pursuant to 740 ILCS 14/20(2)); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:** Defendant admits that Plaintiff Polizzi demands relief, but denies that he is entitled to any relief or that the award of relief is proper in connection with the allegations set forth in the Second Amended Complaint, including without limitation, the relief set forth in the Prayer for Relief.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Defendant hereby demands a jury trial on all claims and issues so triable.

## AFFIRMATIVE DEFENSES

Without waiving the foregoing denials, Defendant asserts the following affirmative or other defenses. By pleading these defenses, Defendant does not intend to alter the burden of proof and/or burden of persuasion that otherwise exists regarding any of the issues in this action. All affirmative defenses are pleaded in the alternative and do not constitute an admission of liability or an admission that Plaintiffs or any member or potential class is entitled to any relief whatsoever arising out of the allegations in the Second Amended Complaint. Further, Defendant expressly reserves the right to amend these affirmative defenses based upon additional facts and information that may be ascertained through discovery.

## FIRST AFFIRMATIVE DEFENSE: DEFENDANT IS EXEMPT FROM BIPA

1.     Contrary to the allegations in the Second Amended Complaint, Defendant does not use biometric technology to store, collect, use or otherwise obtain biometric voiceprints from any customers in the United States, including Plaintiffs.

2.     Defendant has *never* used biometric technology to store, collect, use or otherwise obtain biometric voiceprints from any customers in the United States.

-21-

3.      Therefore, because Defendant has never used biometric voiceprint technology as alleged in the Second Amended Complaint, Defendant is exempt from BIPA's requirements.

## SECOND AFFIRMATIVE DEFENSE: UNCLEAN HANDS

1.      The Second Amended Complaint is barred in whole or in part under the doctrine of unclean hands, because Plaintiffs have no good-faith basis—beyond unfounded speculation and conjecture—to believe that their unique biometric voiceprints were stored, collected, used or otherwise obtained by Defendant.

2.      Plaintiffs thus acted in bad faith in bring this lawsuit, and on that basis are precluded from recovering against Defendant.

## THIRD AFFIRMATIVE DEFENSE: NO BIOMETRIC IDENTIFIERS OR BIOMETRIC INFORMATION

The Second Amended Complaint is barred because Defendant did not retain, store, collect, possess, capture, purchase, receive, transmit, or disclose biometric identifiers or biometric information as defined by BIPA.

## FOURTH AFFIRMATIVE DEFENSE: FAILURE TO SATISFY FED. R. CIV. P. 23

The Second Amended  Complaint is barred, in whole or in part, because Plaintiffs do not satisfy the necessary elements for certification of a class under Fed. R. Civ. P. 23.

## FIFTH AFFIRMATIVE DEFENSE: NO NEGLIGENCE OR RECKLESSNESS

1.      BIPA's "Right of Action" provision states that damages may be awarded only where a defendant "negligently violates a provision of this Act" or "intentionally or recklessly" violates BIPA. 740 ILCS 14/20(1) and (2). BIPA damages awards are discretionary.

2.      Plaintiffs fail to allege that Broder's conduct deviated from the reasonable standard of care met by other entities or employers, in any industry, with respect to BIPA. Plaintiffs also fails to plead the necessary elements of negligence or recklessness.

3.     Further, Plaintiffs' allegations do not sufficiently plead any degree of culpability, and therefore their claims seeking liquidated damages under BIPA fail as a matter of law.

**SIXTH AFFIRMATIVE DEFENSE: DUE PROCESS VIOLATION**

The Second Amended Complaint is barred in whole or in part under the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, and the Due Process Clause of Article I, Section 2 of the Illinois Constitution to the extent that Plaintiffs or any putative class members are seeking statutory damages based on each alleged drive-through visit wherein biometric data was acquired. *Cf. Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 45 (holding that a BIPA claim accrues "with every scan or transmission of biometric identifiers or biometric information without prior informed consent").

**SEVENTH AFFIRMATIVE DEFENSE: EXCESSIVE FINE**

The Second Amended Complaint is barred in whole or in part to the extent that Plaintiff or any putative class members are seeking statutory damages based on each alleged drive-through visit wherein biometric data was acquired, as such "per-scan" damages would constitute an excessive fine in violation of the Eighth Amendment to the U.S. Constitution. *Cf. Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 45 (holding that a BIPA claim accrues "with every scan or transmission of biometric identifiers or biometric information without prior informed consent").

**EIGHTH AFFIRMATIVE DEFENSE: GROSSLY DISPROPORTIONATE RELIEF**

The relief sought by Plaintiffs on their own behalf and on behalf of the putative classes is inappropriate, unconstitutional, and unenforceable under the U.S. and Illinois Constitutions because the relief sought would be grossly disproportionate to the harm alleged or which BIPA seeks to redress. *See, e.g.*, *St. Louis, Iron Mountain & Southern Ry. Co. v. Williams*, 251 U.S. 63,

66–67 (1919); *In re Marriage of Miller*, 227 Ill. 2d 185, 197 (2007); *People v. Bradley*, 79 Ill. 2d 410, 417 (1980).

## NINTH AFFIRMATIVE DEFENSE: UNCONSTITUTIONAL SPECIAL LEGISLATION

The Second Amended Complaint is barred in whole or in part to the extent that BIPA constitutes "special legislation" in violation of the Illinois Constitution. *See* Ill. Const., art. IV, § 13 (prohibiting a "special or local law when a general law is or can be made applicable"). Among other entities, BIPA exempts contractors, subcontractors, and agents of state and local governments, as well as "financial institutions" or "affiliate[s] of a financial institution" from its provisions. 740 ILCS § 14/25(c), (e). The Illinois Constitution, however, prohibits the legislature from designing a law "that discriminates in favor of a select group in an arbitrary manner." *Big Sky Excavating, Inc. v. Illinois Bell Tel. Co*., 217 Ill. 2d 221, 235 (2005). BIPA's exemptions are arbitrary; therefore, the statute is unconstitutional special legislation.

## TENTH AFFIRMATIVE DEFENSE: UNCONSTITUTIONAL CONTENT-BASED RESTRICTION ON SPEECH (U.S. CONST. amend. I)

The Second Amended Complaint is barred in whole or in part by the First Amendment to the U.S. Constitution. First, BIPA unconstitutionally creates a content-based restriction on speech as it explicitly restricts the collection or creation of some categories of personal information ("biometric identifiers" and "biometric information") that give rise to expression, but not others (e.g., writing samples, photographs, tattoo descriptions). 740 ILCS § 14/10. Second, BIPA unconstitutionally creates a speaker-based restriction on speech as it burdens the speech of certain private entities but exempts other types of entities, such as the government and its contractors. *See, e.g*., 740 ILCS § 14/25. Third, BIPA is not narrowly tailored to serve a compelling government interest, and therefore fails strict scrutiny. Further, BIPA also fails the "intermediate

scrutiny" test because it burdens the collection and analysis of information without a sufficiently important governmental interest.

## **ELEVENTH AFFIRMATIVE DEFENSE: VOID FOR VAGUENESS**

The Second Amended Complaint is barred in whole or in part because BIPA's provisions, including, but not limited to, its statute's definitions of "biometric identifiers" and "biometric information," are vague in violation of the U.S. Constitution and the Illinois Constitution.

## **TWELFTH AFFIRMATIVE DEFENSE: NON-RETROACTIVITY OF *ROSENBACH v. SIX FLAGS ENTM'T CORP.*, 2019 IL 12186, AS APPLIED TO BIPA CLAIMS THAT ACCRUED BEFORE JANUARY 25, 2019**

To the extent Plaintiffs seek to represent putative class members whose BIPA claims (if any) accrued prior to the date upon which the Illinois Supreme Court issued its decision in *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 12186—*i.e.*, January 25, 2019—such pre-*Rosenbach* claims are not actionable because the *Rosenbach* decision only applies prospectively under the non-retroactivity principles articulated by the U.S. Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) and its progeny. *See also Aleckson v. Vill. of Round Lake Park*, 176 Ill. 2d 82, 86–93 (1997) (adopting *Chevron Oil*'s three-part retroactivity test as controlling under Illinois state law).

## **RESERVATION OF RIGHT TO AMEND**

Defendant reserves the right to amend its Answer and Affirmative Defenses, and the right to assert additional defenses, counterclaims, cross-claims, or third-party claims as they become known throughout the course of this litigation and as may become available under the substantive laws of Illinois and/or the U.S. Code.

WHEREFORE, Defendant Jimmy John's LLC respectfully prays that the Court enter an Order:

(a)     Dismissing Plaintiffs' claims asserted in the Second Amended Class Action

Complaint, with prejudice;

(b)     Entering judgment against Plaintiffs and in favor of Defendant on Counts I and II

of the Second Amended Complaint;

(c)     Denying Plaintiffs' claims for statutory damages and attorneys' fees; and

(d)     Awarding Defendant its costs and attorneys' fees incurred in defending this

frivolous action, as well as any other relief that this Court deems just and appropriate.

Dated: July 25, 2024          Respectfully submitted,

By:  /s/ *David M. Poell*
David M. Poell (ARDC #6302765)
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Tel: (312) 499-6300
dpoell@sheppardmullin.com

*Counsel for Defendant Jimmy John's LLC*

## **CERTIFICATE OF SERVICE**

I, David Poell, an attorney, hereby certify that on this 25th day of July 2024, a true and correct copy of the foregoing document was filed *via* this Court's CM/ECF filing service, which effects service on all counsel of record in this matter.

/s/ *David M. Poell*

*Counsel for Defendant*